```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )   CR. NO. 08-00497-SOM-2
                             )
          Plaintiff,         )   ORDER DENYING DEFENDANT JAY
                             )   K. CRISOLO'S MOTION FOR
                             )   COMPASSIONATE RELEASE
                             )
     vs.                     )
                             )
JAY K. CRISOLO,              )
                             )
          Defendant.         )
                             )
_____ )
```

**ORDER DENYING DEFENDANT
JAY K. CRISOLO'S MOTION FOR COMPASSIONATE RELEASE**

I.       INTRODUCTION.

In 2009, Defendant Jay K. Crisolo entered a guilty plea to several counts, the majority of which involved the distribution of methamphetamine or conspiracy to distribute methamphetamine. In 2014, this court sentenced him to the mandatory minimum of 20 years in prison. In 2018, Congress amended 21 U.S.C. § 841 as part of the First Step Act, but did not make that amendment retroactive. Under today's law, Crisolo's mandatory minimum sentence would be 10 years. Crisolo argues that, if sentenced under the new law, he might receive a sentence of 210 months in prison (the bottom of his sentencing guidelines range).

Crisolo now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The primary reason he is moving at this time is the COVID-19 pandemic. He contends that his underlying

medical conditions (obesity and hypertension) make him vulnerable to complications if he contracts COVID-19. He contends that his medical conditions, along with the reduced sentence he might receive today under the First Step Act, constitute extraordinary and compelling reasons that justify a reduction in his sentence. While this is a close case, this court, based on the present record, declines to reduce his sentence at this time, acknowledging that a future motion on a different record might yield a different result. After considering his medical condition, the significant time that would remain on Crisolo's sentence even if it were reduced as Crisolo asserts, his criminal history, and his disciplinary record while in prison, this court concludes that Crisolo has not established extraordinary and compelling reasons that warrant a reduction in his sentence.

**II.     ANALYSIS.**

Crisolo's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors

> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

> **A.   Crisolo has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Crisolo submitted an administrative compassionate release request to the warden of his prison on July 16, 2020, more than 30 days before he filed this motion. *See* ECF No. 659, PageID # 2213.  The Government is not contesting Crisolo's satisfaction of the exhaustion requirement.  Accordingly, this court finds that Crisolo has fulfilled the first requirement of § 3582(c)(1)(A).

> B. **This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. Previously, only the Bureau of Prisons could file such motions for inmates. *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); United *States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at

4

odds with the congressional intent behind recent statutory amendments.

As amended by Congress, § 3582(c)(1)(A) states that a court's conclusion that extraordinary and compelling circumstances warrant a reduction in sentence must be consistent with any *applicable* policy statements issued by the Sentencing Commission.  But following the First Step Act's amendments to § 3582(c)(1)(A) in 2018, the Sentencing Commission did not adjust its statements to make them consistent with the statutory amendment allowing prisoners themselves to bring motions for compassionate release.  Instead, the Sentencing Commission has left in place statements premised on the Bureau of Prisons' exclusive authority to bring compassionate release motions.  This court reads such statements as inapplicable to motions brought directly by prisoners.  This court's exercise of discretion is consistent with the statutory amendment and at least the spirit of the Sentencing Commission's approach.  *Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2-3.

This court reads Application Note 1 to section 1B1.13 of the Sentencing Guidelines, which relates to compassionate release motions, as providing that extraordinary and compelling reasons warrant early release under any of four circumstances: if "(1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a

5

physical or mental condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;' (3) certain family circumstances justify compassionate release; or (4) '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons].'" *Kamaka*, 2020 WL 2820139, at *2 (quoting U.S.S.G § 1B1.13, Application Note 1).  Crucially, the final "catch-all" category applies only to the situation in which the Director of the Bureau of Prisons has made the required determination relating to compassionate release.

That "catch-all" made sense when only the Director of the Bureau of Prisons could bring a compassionate release motion. The Sentencing Commission anticipated that the Director of the Bureau of Prisons, and not the courts, would rely on the four categories:

> A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant [falls under any of the four enumerated categories]. *The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18*

6

> *U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.*

U.S.S.G § 1B1.13, Application Note 4 (emphasis added). In other words, the Sentencing Commission anticipated that the Director of the Bureau of Prisons would file a compassionate release motion whenever it determined that an inmate fell into one of the four enumerated categories of extraordinary and compelling circumstances. Even then, when a court considered the motion, it was expected to exercise discretion (after considering a broad range of criteria, such as the § 3553 factors, the defendant's medical condition, and the defendant's family circumstances). That is, when the Director of the Bureau of Prisons brought a motion to the court, the Sentencing Commission did not intend for the court to be bound by the four enumerated categories. In particular, the Sentencing Commission did not intend for the court to be bound by the Director of the Bureau of Prisons' determination that "other reasons" justified early release.

If courts were indeed bound by the "catch-all" category, and if that category only allowed the Director of the Bureau of Prisons to exercise discretion, then judicial review would be meaningless. Courts would have to determine that extraordinary and compelling circumstances existed every time the Director of the Bureau of Prisons made such a determination.

7

Courts would be nothing more than a rubber stamp. That was not the vision the Sentencing Commission had even under the old scheme. Instead, in noting that a court was in "a unique position to determine whether the circumstances warrant a reduction," the Sentencing Commission was clearly anticipating that courts would independently review such motions. U.S.S.G § 1B1.13, Application Note 4.

In sum, in Application Note 1, the Sentencing Commission reviewed the four categories that the Director of the Bureau of Prisons, not the courts, could consider in bringing motions. Those categories are not "applicable" to compassionate release motions brought by inmates themselves. *See United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *4-6 (2d Cir. Sept. 25, 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."). Even if the commentary applies to motions filed by inmates, a court's exercise of discretion to make the determination formerly made by the Director of the Bureau of Prisons is consistent with the Sentencing Commission's understanding of the scope of a court's authority over the ultimate compassionate release decision. *Accord Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2.

In allowing inmate motions, Congress gave no indication that judicial discretion was more constrained with inmate motions than with Bureau of Prisons motions. It appears that Congress

8

reasonably expected Application Note 1 to be amended or supplemented.  That did not occur.  Possibly that was because the Sentencing Commission was short commissioners and thus lacked a quorum.[1]  As this court has already concluded, the outdated Application Note does not constrain this court's discretion in determining whether extraordinary and compelling circumstances warrant a reduction in a sentence.  *See Mau*, 2020 WL 6153581.

> **C. Crisolo has not demonstrated that extraordinary and compelling circumstances justify his early release.**

Crisolo contends that extraordinary and compelling circumstances justify his early release here.  He relies primarily on the risks he faces if he contracts COVID-19.  The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

> *Cancer
>
> *Chronic kidney disease
>
> *COPD (chronic obstructive pulmonary disease)
>
> *heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

---

[1] It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has had only two voting commissioners. *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

  *Immunocompromised state (weakened immune system) from solid organ transplant

  *Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

  *Severe Obesity (BMI = 40 kg/m2)

  *Sickle cell disease

  *Smoking

  *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 22, 2020).

  The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

  *Asthma (moderate-to-severe)

  *Cerebrovascular disease (affects blood vessels and blood supply to the brain)

  *Cystic fibrosis

  *Hypertension or high blood pressure

  *Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

  *Neurologic conditions, such as dementia

  *Liver disease

  *Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

  *Pregnancy

>          *Pulmonary fibrosis (having damaged or scarred lung tissues)
>
>          *Thalassemia (a type of blood disorder)
>
>          *Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Crisolo's obesity (his BMI is 32.6) and hypertension increase his risk of a severe illness if he contracts COVID-19, which is present at FCI Bastrop, where he is housed.  The number of cases at FCI Bastop appears to be rising, with 72 inmates and 10 staff members listed as testing positive in the BOP's latest report, and 12 inmates and 3 staff members listed as having "recovered."  *See* www.bop.gov/coronavirus (last visited October 28, 2020).  Crisolo is 54 years old; his age does not place him in the highest risk category.  While this court certainly agrees that Crisolo has legitimate concerns about contracting COVID-19, his medical conditions, standing alone, are not an exceptional and compelling reason that warrants a reduction in sentence.

Although not agreeing with Crisolo that he is entitled to compassionate release, this court declines to adopt the Government's argument that obese defendants should not be given the same consideration for compassionate release as those whose medical conditions are undeniably out of their control.  *See* ECF No. 666, PageID # 2427-28.  For several reasons, that argument cannot withstand scrutiny.

As an initial matter, the Government does not show that its assertion that obesity is "within the control of the individual," *see id.* at 2427, applies automatically in an individual case.  Even if that assertion applies in a particular case, that does not mean that an obese individual chose to be at risk of serious complications if infected by the coronavirus.  Crisolo's obesity predates the present pandemic.  Crisolo could not have known in 2019 or earlier about the risks of the coronavirus.

As a more fundamental matter, this court questions the Government's implicit assumption that a judge addressing a compassionate release request should rule based on judgments about whether an inmate has lived an optimally healthy life.  If an inmate seeking compassionate release had lung cancer, this court would not ignore the risks of COVID-19 because that inmate smoked.  Similarly, if an inmate were HIV positive, the court would not consider inquiring into the inmate's sexual activity and ask how the inmate contracted HIV before considering the risks posed by the coronavirus.  For the same reasons, this court will not entertain assertions that it should disregard or minimize the risks posed by COVID-19 to an inmate who might have controlled the inmate's obesity.  The court's view is that the court needs to consider an individual movant's medical conditions at the time of the motion, rather than looking at what medical

conditions the movant might have avoided or ameliorated.

Nor does this court think it should ignore the impact of prison conditions on medical conditions.  Crisolo's prison has implemented measures to prevent the spread of COVID-19 that limit Crisolo's opportunities to exercise.  Especially during the pandemic, Crisolo is unlikely to have the kind of food choices that he might know are best for his health.  This court thinks it is unfair to blame Crisolo for restrictive prison conditions that he cannot control.  Crisolo's medical conditions, in this court's view, fall squarely within the category of factors that this court should seriously consider.  But medical conditions are clearly not the only thing that is pertinent.

An important factor this court considers is the time remaining on Crisolo's sentence.  Crisolo has been in custody since May 16, 2008.  ECF No. 593, PageID # 1850.  Even if credit for good behavior is taken into account, he still has many years left on his sentence.

Crisolo argues that this court should consider the impact of the First Step Act on that sentence.  This court has previously held that a change in the law may be a relevant consideration in determining whether extraordinary and compelling circumstances justify a defendants' release, although, when a change has not been made retroactive, this court has declined to rule that the change may be the sole consideration.  *United*

*States v. Cisneros*, 2020 WL 3065103, at *3-4 (D. Haw. June 9, 2020). Under § 3582(c)(1)(A), a court must consider whether a reduced sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). The possibility that a defendant would receive a reduced sentence if sentenced today could affect all of those considerations.

Crisolo contends that, if he were sentenced today, his mandatory minimum prison term would be reduced from 20 years to 10 years. ECF No. 659, PageID # 2220. He therefore maintains that he would likely have received a sentence of 210 months in prison (the bottom of his guidelines range), or possibly even a below-guidelines sentence. *Id.*

Crisolo does not persuade this court that a below-guideline sentence would likely have been imposed. In addition to Crisolo's extensive criminal record (discussed in detail below), Crisolo's history includes several troubling indications. In 2007, Crisolo's wife allegedly informed police that Crisolo had grabbed her by the neck during an argument and threatened to beat her in front of their child. ECF No. 539, PageID # 1869-70. The Presentence Investigation Report discusses other domestic violence reports and indicates that the FBI identified Crisolo as a member of the USO for Life prison gang who was actively

involved in its drug operations.  ECF No. 539, PageID # 1869-70. *Id.* at 1870.  That record does not suggest a likely below-guidelines sentence.  While several of Crisolo's co-conspirators did receive lower prison sentences, most of those defendants benefitted from Government motions for downward departure. Crisolo had no such motion.

The change in the law affected the mandatory minimum prison sentence; even today that change does not guarantee a sentence below the guideline range.  In Crisolo's case, his guideline range exceeded the new mandatory minimum.  Even assuming this court would have imposed a sentence at the borrom of the guideline range, Crisolo would still have two to three years left to serve.  ECF No. 659, PageID # 2221.  Crisolo does not show that he has likely been overdetained or would likely be on the eve of his release if he had been sentenced under the new law.

This court also considers Crisolo's criminal history. In 1995, Crisolo was convicted of a crime involving the theft of a motorcycle.  ECF No. 598, PageID # 1864-65.  He was sentenced to probation, but his probation was revoked in 1997 when he was arrested (and later convicted) of a second crime involving the theft of a vehicle.  *Id.* at 1865.  While he was on probation, he also broke into a store and stole golf clubs valued at $15,000. As a result, he was convicted of burglary in 1998.  *Id.*  He was

15

paroled in 2000, but in 2001 his parole was revoked for substance abuse violations. *Id.* at 1864-65. During his parole, he was also arrested for passing counterfeit checks. Consequently, in 2002, he was convicted of forgery. *Id.* at 1867. He was released in 2006, and the criminal conduct in this case began in 2007. In short, his record is not encouraging.

Finally, this court considers Crisolo's disciplinary record while in prison. Crisolo's behavior appears to have cost him the loss of some good time credit. *See* ECF 659-5, PageID # 2257; ECF 670, PageID # 2527.[2] While Crisolo has been disciplined on three separate occasions, the most recent incident occurred in July 2013, more than seven years ago. ECF No. 659-5, PageID # 2257. Moreover, Crisolo asserts that he has completed 54 educational and vocational classes while in prison, and that he has a Unicor desk job.[3] ECF No. 659, PageID # 2222. Thus, the includes some encouraging indications about Crisolo's commitment to his rehabilitation.

The court considers this a close case. But under

---

[2] At one point, Crisolo asserted that there had been no deductions from good time credits, *see* ECF 659, PageID # 2221, but he later conceded a deduction. *See* ECF 670, PageID # 2527.

[3] Crisolo did not provide a citation in support of his repeated assertion that he has completed 54 classes, and at one point he said that he had completed 44 rather than 54 classes. ECF No. 659, PageID # 2212. Because the Government did not dispute Crisolo's assertion, this court is assuming that "44" was a typographical error and, in considering Crisolo's motion, is accepting the reference to 54 classes.

16

§ 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  After considering Crisolo's medical conditions, the time remaining on his sentence and the impact of the First Step Act, and his history, this court concludes that it does not have an extraordinary and compelling reason to reduce Crisolo's sentence at this time.  That does not mean that, in the future, Crisolo cannot bring another motion asking for compassionate release that might be based on his medical condition, the impact of the First Step Act, his continued rehabilitation, and other developments.  The court understands that Crisolo would like the court to reduce his sentence now, even if the reduction would not be large enough to result in immediate release and would instead require him to serve further years in prison.  This court, however, thinks it makes more sense for Crisolo to bring a new motion that offers new arguments and a new record, particularly because the trigger for the present motion is the coronavirus.  It makes no sense to view the pandemic as a factor and then to order release at a timed when, it is hoped, the pandemic will have subsided.

      To avoid any misunderstanding, this court stresses that it is ruling that Crisolo has not shown entitlement to compassionate release at present.  This court is confining this order to the present record and the present state of the law.  The court is, however, not saying that it will never order

17

compassionate release based at least in part on changes in sentencing provisions. While this court is not here committing to releasing Crisolo in the future on some different record, Crisolo can increase his chances of a favorable ruling by making a showing of further positive progress in his rehabilitative efforts. Based on the present record, the court declines at this time to release Crisolo under § 3582(c)(1)(A).

**III.    CONCLUSION.**

Crisolo's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 28, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Crisolo*, Cr. No. 08-00497-SOM-2; ORDER DENYING JAY K. CRISOLO'S MOTION FOR COMPASSIONATE RELEASE